# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| LINDA A. JACKSON and CHELLIE | § | |
| JACK CARR a/k/a CHELLIE | § | |
| JACKSON CARR-MORA, | § | |
|     Plaintiffs, | § | |
| v. | § | |
| | § | |
| U.S. BANK NATIONAL | § | |
| ASSOCIATION, as Trustee, in trust on | § | Civil Action No. 4:17-CV-2516 |
| Behalf of J.P. Morgan Mortgage | § | |
| Acquisition Trust 2006-CW2, | § | |
| SELECT PORTFOLIO SERVICING, | § | |
| INC., and SHAPIROSCHWARTZ | § | |
| L.L.P. D/B/A/ SHAPIRO SCHWARTZ | § | |
| LLP, | § | |
|     Defendants. | § | |

## MEMORANDUM AND ORDER

Currently pending before the Court in this debt collection and foreclosure dispute are two motions for summary judgment and judgment on the pleadings: Defendants U.S. Bank National Association, as Trustee, in trust on Behalf of J.P. Morgan Mortgage Acquisition Trust 2006-CW2 ("Trustee") and Select Portfolio Servicing, Inc.'s ("SPS") Motion to Summary Judgment and Motion for Judgment on the Pleadings (the "SPS Motion") [Doc. # 21] and Defendant Shapiro Schwartz, LLP's ("Shapiro") Motion for Summary Judgment and Motion for Judgment on the Pleadings (the "Shapiro Motion" and, together with the SPS Motion, the

"Motions") [Doc. # 22]. Plaintiffs Linda Jackson and Chellie Jack Carr filed timely responses to the Motions, to which Defendants Trustee and SPS timely replied.[1] On August 3, 2018, the Court held oral arguments on the Motions.[2] The Motions are now ripe for decision. Having considered the parties' briefing and argument, the applicable legal authorities, and all pertinent matters of record, the Court concludes that the SPS Motion should be **granted** and that the Shapiro Motion should be **granted in substantial part**.

## I. BACKGROUND

Unless otherwise indicated, the following facts are not in genuine dispute for purposes of the Motions.

Plaintiffs are the owners of the property located at 36927 Alamo Drive, Simonton, Texas, 77476 (the "Property"). In February 2006, Plaintiffs took out a loan on the Property (the "Loan").[3] In connection with the Loan, Plaintiffs also

---

[1] Plaintiffs' Response in Opposition to the SPS Motion (the "SPS Response") [Doc. # 23]; Plaintiffs' Response in Opposition to the Shapiro Motion (the "Shapiro Response") [Doc. # 24]; Defendants Trustee and SPS's Objections to Plaintiffs' Summary Judgment Evidence and Reply to the SPS Response [Doc. # 25]. Plaintiffs also belatedly filed supplementary summary judgment evidence regarding the medical history of Plaintiff Chellie Carr-Mora, which the Court deems to be part of the summary judgment record in this case. *See* Supplemental Exhibits [Doc. # 28]; Further Supplemented Exhibits [Doc. # 31].

[2] Notice of Resetting [Doc. # 30]; Hearing Minutes and Order [Doc. # 32].

[3] The amount of the loan was $139,200, the term of the loan was 30 years, and the interest rate on the loan was 7.875%.

executed a Texas Home Equity Security Instrument (First Lien) (the "Security Agreement"). Section 5 of the Security Agreement, which addresses insurance on the Property, states in relevant part that:

> Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to insure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

Section 2 of the Security Agreement provides that any "application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount," of Plaintiffs' required monthly mortgage payments.

In May 2012, Countrywide assigned the Loan to Trustee. In turn, Trustee retained SPS to begin servicing the Loan in December 2013. SPS argues that

Plaintiffs were current on their mortgage and not in default under the Security Instrument when it began servicing the Loan in December 2013. Plaintiffs dispute this and contend that they were in default when SPS began servicing the Loan.

On March 12, 2016, Shapiro cancelled the debt collector bond it had registered with the State of Texas. There is no evidence that Shapiro possessed a debt collector bond from and after March 12, 2016.

Plaintiffs' May 9, 2016 monthly payment was the last they made under the Loan and Security Instrument despite still owing a significant balance thereunder.[4] In late May 2016, the Property experienced substantial damage from flooding. At the time of the flood, the Property was subject to a flood insurance policy.

On June 16, 2016, SPS sent Plaintiffs a letter stating they were in default under the Loan. The letter stated that Plaintiffs had until July 16, 2016, or thirty days from the date of the letter, to cure the default by paying $7,349.60. Plaintiffs were advised that failure to cure the default by July 16, 2016 would result in acceleration of the Loan.

On June 23, 2016, the insurer under Plaintiffs' flood insurance policy issued a check in the amount of $127,429 payable to both SPS and Plaintiffs.

---

[4]     Although Plaintiffs made a mortgage payment in May 2016, the Loan was not current at that time, and Plaintiffs had a past due balance under the loan of approximately $4,000. Indeed, it appears that Plaintiffs had not been current in their payment obligations under the Loan since February 2013.

Approximately one month later, on July 27, 2016, Plaintiff Chellie Jackson Carr faxed a letter to SPS regarding the insurance proceeds. In the letter, Plaintiff Jackson Carr stated that repairing or rebuilding the house on the Property was not economically feasible. Instead, Plaintiff Jackson Carr proposed that Plaintiffs and SPS reach a "settlement" with respect to the insurance proceeds whereby Plaintiffs would pay SPS $30,000 in satisfaction of the Loan and the remainder of the insurance proceeds would be released to Plaintiffs. Trustee and SPS rejected this offer. There is no evidence that at any time between July 26, 2016 and commencement of this lawsuit that Plaintiffs withdrew their demand to receive a direct disbursement of the insurance proceeds. Nor is there evidence Plaintiffs asked SPS or Trustee to apply the insurance proceeds to the outstanding Loan balance.

In late December 2016, SPS retained Shapiro to represent it and Trustee in foreclosure proceedings against Plaintiffs with respect to the Property. On January 13, 2017, Shapiro sent each Plaintiff a letter regarding the status of the Loan. Both letters stated that, as of December 27, 2016, the Loan had a balance owing of $139,029.64. In addition, each letter stated that "[a]t this time no attorney within the firm has personally reviewed the particular circumstances of your account." Moreover, each letter contained the following warning, in capitalized and bold text:

**PURSUANT TO THE FAIR DEBT COLLECTION PRACTICES ACT, YOU ARE ADVISED THIS OFFICE IS DEEMED TO BE A DEBT COLELCTOR. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

Also on January 13, 2017, Shapiro sent Plaintiffs a "Notice of Acceleration." According to the Notice of Acceleration, Trustee had elected to accelerate the maturity of the Loan, and all sums due thereunder would be immediately due and payable because "payment of past monthly mortgage payments has not been received, although prior notice of default and intent to accelerate has been provided." Shapiro's Notice of Acceleration also contained the following warning, in capitalized and bold text:

**THIS FIRM IS A DEBT COLLECTOR. THIS LETTER IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

On April 25, 2017, SPS sent Plaintiffs a letter providing them the opportunity to cure their delinquency under the Loan by paying $24,390.44 on or before May 24, 2017. However, the letter specifically noted that "issuance of this Reinstatement Quote does not constitute an agreement by SPS to suspend pending or future legal action or payment of: taxes, insurance, legal fees, legal costs, collection related expenses or any other miscellaneous expense." Plaintiffs did not respond to any of the communications they received from SPS or Shapiro.

On May 11, 2017, Shapiro, on behalf of Trustee, filed an Application for an Expedited Order Under Rule 736 on a Home Equity Loan or Home Equity Line of

Credit (the "Application") in Texas state court. According to the Application, Trustee was seeking to foreclose on the Property because Plaintiffs had missed "at least 14 regular monthly payments" and were in default under the Loan in the amount of $24,390.44. The Application also stated that the total amount then owing under the Loan was $144,068.58.

Plaintiffs filed an Original Petition [Doc. # 1-4] in Texas state court on July 7, 2017. In the Original Petition, Plaintiffs allege that they "had a flood insurance policy in effect at the time of the flood and a check in the amount of $127,429.00 was issued payable to SPS and Plaintiffs," and that "SPS refused to release the check to Plaintiffs so that repairs could be started." Original Petition [Doc. # 1-4], p. 2. Among other causes of action, Plaintiffs sought a declaration that the Court "declare them the rightful owners of the flood insurance funds currently in the hands of SPS or [Trustee]. Plaintiffs further ask this Court to order the appropriate Defendant to disgorge said funds to Plaintiffs." *Id.* at p. 5. On August 16, 2017, Defendants Trustee and SPS timely removed this case to federal court. Notice of Removal [Doc. # 1].

On September 12, 2017, Plaintiffs filed their First Amended Complaint [Doc. # 6]. In the First Amended Complaint, Plaintiffs continued to assert that they "had a flood insurance policy in effect at the time of the flood and a check in the amount of $127,429.00 was issued payable to SPS and Plaintiffs," and that

"SPS refused to release the check to Plaintiffs so that repairs could be started." First Amended Complaint [Doc. # 6], ¶ 8. Plaintiffs also continued to assert a declaratory relief claim identical to that asserted in the Original Petition.

On October 10, 2017, Plaintiffs filed their Second Amended Complaint [Doc. # 12], which is their operative pleading in this case. In the Second Amended Complaint, Plaintiffs asserted the same allegations regarding the flood insurance proceeds and the same request for declaratory relief included in their Original Petition and First Amended Complaint.

On October 20, 2017, counsel for Trustee and SPS sent a letter to Plaintiffs' counsel regarding the status of the insurance proceeds from the May 2016 flood. In the letter, counsel for Trustee and SPS noted that as a result of Hurricane Harvey, Plaintiffs had received an additional $44,528.52 in insurance proceeds, and that those proceeds, combined with the proceeds from the May 2016 flood, exceeded Plaintiffs' balance under the Loan, which was $152,228.33 as of October 16, 2017. Counsel for Trustee and SPS proposed that that the insurance proceeds be used to pay off the Loan in full, and that the remaining amount of insurance proceeds, $19,727.19, be disbursed to Plaintiffs. The parties agreed to this proposal, and, as of March 2018, the Loan was reported to at least one credit rating agency as "paid" and "closed."

## II.    LEGAL STANDARDS

### A.    Standard for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.*, 289 F.3d 373, 375 (5th Cir. 2002). Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex*, 477 U.S. at 322–23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). The moving party, however, need not negate the elements of the non-movant's case. *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). The moving party may meet its burden by pointing out "'the absence of evidence supporting the nonmoving party's case.'" *Duffy v. Leading Edge*

*Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 913 (5th Cir. 1992)). If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial.

In deciding whether a genuine and material fact issue has been created, the court reviews the facts and inferences to be drawn from them in the light most favorable to the nonmoving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant. *Tamez v. Manthey*, 589 F.3d 764, 769 (5th Cir. 2009) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings. *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002), *overruled in part on other grounds by Grand Isle Shipyard, Inc. v. Seacor Marine, LLC*, 589 F.3d 778 (5th Cir. 2009). Likewise, "conclusory allegations" or "unsubstantiated assertions" do not meet the non-movant's burden. *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008). Instead, the nonmoving party must present specific facts that show "the existence of a genuine issue concerning every essential component of its case." *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343

F.3d 401, 405 (5th Cir. 2003) (citation and internal quotation marks omitted).  In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts.  *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

The Court may make no credibility determinations or weigh any evidence. *See Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2010) (citing *Reaves Brokerage Co.*, 336 F.3d at 412–413).  The Court is not required to accept the nonmovant's conclusory allegations, speculation, and unsubstantiated assertions which are either entirely unsupported, or supported by a mere scintilla of evidence. *Id.* (citing *Reaves Brokerage*, 336 F.3d at 413).

Affidavits cannot preclude summary judgment unless they contain competent and otherwise admissible evidence.  *See* FED. R. CIV. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated"); *Love v. Nat'l Med. Enters.*, 230 F.3d 765, 776 (5th Cir. 2000); *Hunter–Reed v. City of Houston*, 244 F. Supp. 2d 733, 745 (S.D. Tex. 2003).  A party's self-serving and unsupported statement in an affidavit will not defeat summary judgment where the evidence in the record is to the contrary.  *See In re Hinsely*, 201 F.3d 638, 643 (5th Cir. 2000).

Finally, although the Court may consider all materials in the record when deciding a summary judgment motion, "the court need consider only the cited materials." FED. R. CIV. P. 56(c)(3). "When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court. Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) (internal citations and quotation marks omitted).

## B. Standard for Judgment on the Pleadings

Under Federal Rule of Civil Procedure 12(c), any party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." FED. R. CIV. P. 12(C). A Rule 12(c) motion "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Hebert Abstract Co., Inc. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990); *United States v. Renda Marine, Inc.*, 750 F. Supp. 2d 755, 763 (E.D. Tex. 2010), *aff'd*, 667 F.3d 651 (5th Cir. 2012). Motions for judgment on the pleadings are governed by the same legal standard as motions to dismiss under

Rule 12(b)(6). *See Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 209 (5th Cir. 2009).

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is viewed with disfavor and is rarely granted. *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (citing *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)). The complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true. *Harrington*, 563 F.3d at 147. The complaint must, however, contain sufficient factual allegations, as opposed to legal conclusions, to state a claim for relief that is "plausible on its face." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Patrick v. Wal-Mart, Inc.*, 681 F.3d 614, 617 (5th Cir. 2012). When there are well-pleaded factual allegations, a court should presume they are true, even if doubtful, and then determine whether they plausibly give rise to an entitlement to relief. *Iqbal*, 556 U.S. at 679. Regardless of how well-pleaded the factual allegations may be, they must demonstrate that the plaintiff is entitled to relief under a valid legal theory. *See Neitzke v. Williams*, 490 U.S. 319, 327 (1989); *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997).

## III.    ANALYSIS

In the Second Amended Complaint, Plaintiffs assert eight different causes of action against some or all Defendants.[5]  In Count One, Plaintiffs allege that Defendant Trustee violated Section 392.306 of the Texas Debt Collection Practices Act ("TDCPA")[6] by hiring SPS and Shapiro as debt collectors despite knowing that each had repeatedly violated the TDCPA.  In Count Two, Plaintiffs assert Defendant Shapiro violated TDCPA Section 392.101 by failing to obtain the requisite surety bond for debt collectors.  Count Three of the Second Amended Complaint, which also is asserted against Shapiro, claims that the Application was a fraudulent lien in violation of Section 12.002 of the Texas Civil Practices & Remedies Code.  In Counts Four, Six, and Eight of the Second Amended Complaint, Plaintiffs assert that Shapiro and SPS violated Section 1692e(2)(A) of the Fair Debt Collection Practices Act ("FDCPA")[7] by failing to account for the insurance proceeds in their communications with Plaintiffs and credit rating agencies, and thus misrepresenting the amount of Plaintiffs mortgage debt, and by reporting inflated mortgage debt balances to credit reporting agencies.  Finally, in Counts Five and Seven of the Second Amended Complaint, Plaintiffs assert

---

[5]     Because of the parties' October 2017 agreement with respect the use of the insurance proceeds, Plaintiffs have abandoned their declaratory relief claim.  SPS Response [Doc. # 23], ¶ 3.

[6]     TEX. FIN. CODE ANN. § 392.000, *et seq.*

[7]     15 U.S.C. § 1692, *et seq.*

Shapiro and SPS violated Section 392.304(a)(8) of the TDCPA for the same reasons they allegedly violated Section 1692e(2)(A) of the FDCPA. By their Motions, Defendants seek judgment on the pleadings or summary judgment on each of the eight counts in the Second Amended Complaint. The gravamen of the Motions is that Plaintiffs fail to point to sufficient evidence to create a genuine dispute of material fact, or in some instances fail even to allege facts, on each element of their claims and therefore each claim should be dismissed. For the reasons stated hereafter, with one limited exception, the Court agrees with Defendants.

## A.    TDCPA § 392.306

Plaintiffs' first claim is against Trustee for violation of TDCPA § 392.306. Under § 392.306, a "creditor may not use an independent debt collector if the creditor has actual knowledge that the independent debt collector repeatedly or continuously engages in acts or practices that are prohibited by this chapter." TEX. FIN. CODE § 392.306. Plaintiffs allege that Trustee violated this section by "hiring SPS and [Shapiro] as third party debt collectors with knowledge that both entities repeatedly violated the Texas Finance Code."[8] Defendant Trustee moves for judgment on the pleadings regarding this claim because the Second Amended

---

[8]    Second Amended Complaint [Doc. # 12], ¶ 14.

Shapiro and SPS violated Section 392.304(a)(8) of the TDCPA for the same reasons they allegedly violated Section 1692e(2)(A) of the FDCPA. By their Motions, Defendants seek judgment on the pleadings or summary judgment on each of the eight counts in the Second Amended Complaint. The gravamen of the Motions is that Plaintiffs fail to point to sufficient evidence to create a genuine dispute of material fact, or in some instances fail even to allege facts, on each element of their claims and therefore each claim should be dismissed. For the reasons stated hereafter, with one limited exception, the Court agrees with Defendants.

## A.    TDCPA § 392.306

Plaintiffs' first claim is against Trustee for violation of TDCPA § 392.306. Under § 392.306, a "creditor may not use an independent debt collector if the creditor has actual knowledge that the independent debt collector repeatedly or continuously engages in acts or practices that are prohibited by this chapter." TEX. FIN. CODE § 392.306. Plaintiffs allege that Trustee violated this section by "hiring SPS and [Shapiro] as third party debt collectors with knowledge that both entities repeatedly violated the Texas Finance Code."[8] Defendant Trustee moves for judgment on the pleadings regarding this claim because the Second Amended

---

[8]    Second Amended Complaint [Doc. # 12], ¶ 14.

P:\ORDERS\11-2017\2516MSJ.docx

Complaint is devoid of factual supporting allegations. Trustee moves also for summary judgment on this claim because Plaintiffs have no evidence that Trustee had actual knowledge that SPS or Shapiro repeatedly or continuously violated the Texas Finance Code. Trustees arguments have merit.

Trustee is entitled to summary judgment on Plaintiffs' TDCPA § 392.306 claim on the merits. Despite arguing in the SPS Response that SPS and Shapiro were "known" violators of the Texas Debt Collection Act, Plaintiffs cite no evidence whatsoever in support of that supposition, let alone any evidence that such a fact was "known" to Trustee. Absent any such evidence, Plaintiffs cannot prevail on their TDCPA § 392.306 claim. *See London v. Gums*, 2014 WL 546914, at *9 (S.D. Tex. Feb. 10, 2014) ("There is no evidence that Davis d/b/a Set 'Em Free had actual knowledge that TDA Investigations repeatedly or continuously engaged in acts or practices prohibited by the Texas Finance Code. Davis d/b/a Set 'Em Free therefore did not violate this section."). Trustee is entitled to summary judgment on this claim and the SPS Motion is **granted** on Count One of the Second Amended Complaint.[9]

_____

[9] Trustee also is entitled to judgment on the pleadings with respect to this claim. Assuming *arguendo* that SPS and Shapiro are repeat violators of the Texas Finance Code, Plaintiffs' Second Amended Complaint lacks a single, non-conclusory allegation that Trustee had actual knowledge of that fact. Plaintiffs make no allegations that Trustee had any knowledge of SPS's or Shapiro's past conduct before retaining them or even that Trustee had actual knowledge of the

(continued…)

## B.     TDCPA § 392.101

In Count Two of their Second Amended Complaint, Plaintiffs allege that Shapiro violated TDCPA § 392.101 by conducting business as a third-party debt collector in Texas without the requisite surety bond.[10]  Shapiro responds that it is not a "third-party debt collector" within the meaning of the TDCPA, and thus, is not subject to the bond requirement.  Shapiro responds further that even if it is a "third-party debt collector," its efforts in connection with the attempted foreclosure

---

(continued…)
other Defendants' allegedly improper conduct with respect to Plaintiffs that is in issue in this case.  Under the plain language of the statute, Trustee's actual knowledge of wrongdoing is an essential element of a claim under TDCPA § 392.306.   Plaintiffs' conclusory, threadbare allegation that Trustee had "knowledge" of SPS's and Shapiro's purported past misdealings is wholly insufficient to support a claim that Trustee violated TDCPA § 392.306.  *See Thomas v. Miramar Lakes Homeowners Ass'n*, 2014 WL 3897809, at *6 (S.D. Tex. Aug. 6, 2014) ("To support her TDCA claim, Thomas's amended complaint offers nothing more than a threadbare recitation of the statute. She does not offer any facts showing that the Association had 'actual knowledge,' or any knowledge, that Sterling or the O'Neal firm 'repeatedly or continuously' engaged in conduct prohibited by the TDCA. As such, Thomas has failed to state a claim for relief under this section and her claim is dismissed."); *Woods v. Keiffer*, 2014 WL 572505, at *5 (N.D. Tex. Feb. 12, 2014) ("Absent from the complaint are any facts showing that PennyMac had actual knowledge, or any knowledge, that Barrett Daffin "repeatedly or continuously" violated the provisions of Chapter 392 of the Texas Finance Code. Accordingly, plaintiff has failed to state a claim for relief under section 392.306.").  The SPS Motion is **granted** on Count One of the Second Amended Complaint for that independent reason.

[10]    *See* TEX. FIN. CODE § 392.101(a) ("A third-party debt collector or credit bureau may not engage in debt collection unless the third-party debt collector or credit bureau has obtained a surety bond issued by a surety company authorized to do business in this state as prescribed by this section.  A copy of the bond must be filed with the secretary of state.").

of the Property are not "debt collections" within the meaning of the TDCPA. These responses lack merit.

Under the TDCPA, the definition of "third-party debt collector" is based in large part on the definition of "debt collector" in the FDCPA.[11]  However, the TDCPA does not adopt the FDCPA's definition of "debt collector" in its entirety; instead, the TDCPA adopts a narrowed definition specifically excluding any "attorney collecting a debt as an attorney on behalf of and in the name of a client unless the attorney has nonattorney employees who: (A) are regularly engaged to solicit debts for collection; or (B) regularly make contact with debtors for the purpose of collection or adjustment of debts."[12]  In support of its assertion that it falls outside the TDCPA's definition of "third-party debt collector," Shapiro submitted the sworn declaration of Brandon Howard, Esq., a licensed attorney in the State of Texas who practices at Shapiro.  Howard avers in his declaration that Shapiro "does not have any nonattorney employees who solicit debts for collection or who make contact with debtors to collect or adjust debts," and that no

---

[11]     *See* TEX. FIN. CODE § 392.001(7) ("'Third-party debt collector' means a debt collector, as defined by 15 U.S.C. Section 1692a(6)").  The FDCPA defines a "debt collector," subject to certain exclusions, as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692(a).

[12]     *Id.*

"nonattorney employee of [Shapiro] contacted the debtor on this or any other loan seeking collection of the debt."[13]  He avers further that "the Fair Debt Letters attached to Plaintiffs' Second Amended Petition were prepared by, and sent at the direction of, C. Dexter Jordan, a lawyer formerly employed by [Shapiro], not a nonattorney employee of [Shapiro]."[14]

Plaintiffs argue that notwithstanding Howard's averments, the content of the letters they received from Shapiro, at a minimum, create a genuine dispute of material fact as to whether Shapiro is a third-party debt collector subject to the requirements of TDCPA § 392.101.  The Court agrees.  The second page of the letters Shapiro sent Plaintiffs in January 2017 contains the following sentence: "At this time no attorney within the firm has personally reviewed the particular circumstances of your account."  This language is commonly known as a "*Greco* disclaimer" because it tracks language approved by the Second Circuit in *Greco v. Trauner, Cohen & Thomas, LLP*.[15]  The purpose of a "*Greco* disclaimer" is to aid lawyers and law firms that participate in debt collection activities in avoiding

---

[13]   Declaration of Brandon Howard in Support of Motion for Summary Judgment ("Howard Declaration") [Doc. # 22-1], p. 2.

[14]   *Id.*

[15]   412 F.3d 360, 361 (2d Cir. 2005) ("At this time, no attorney with this firm has personally reviewed the particular circumstances of your account.").

liability under FDCPA Section 1692e(3).[16]  Because a "letter from a lawyer

implies that the lawyer has become involved in the debt collection process," if "a

debt collector (attorney or otherwise) wants to take advantage of the special

connotation of the word 'attorney' in the minds of delinquent consumer debtors to

better effect collection of the debt, the debt collector should at least ensure that an

attorney has become professionally involved in the debtor's file."  *Gonzalez v.

Kay*, 577 F.3d 600, 604 (5th Cir. 2009) (quoting *Avila v. Rubin*, 84 F.3d 222, 229

(7th Cir. 1996).  Consequently, it is a violation of the FDCPA for an attorney

acting as a debt collector and who is not "professionally involved in the debtor's

file" to send a collection letter to the debtor identifying him or herself as a lawyer

unless the lawyer notifies the debtor "through a clear and prominent disclaimer in

the letter, that the lawyer is wearing a 'debt collector' hat and not a 'lawyer' hat

when sending out the letter."  *Id*. (citing *Greco*, 412 F.3d at 361-62).

The attorney exemption from the definition of a "third-party debt collector"

under the TDCPA is applicable only to an "attorney collecting a debt *as an

attorney*."  TEX. FIN. CODE § 392.001(7) (emphasis added).  Shapiro's inclusion of

a *Greco* disclaimer in its January 2017 letters to Plaintiffs raises a genuine dispute

---

[16]     *See* 15 U.S.C. § 1692e(3) (prohibiting debt collectors from making a "false
representation or implication that any individual is an attorney or that any
communication is from an attorney.").

of material fact as to whether Shapiro was acting as SPS's attorney, and not simply a debt collector, when it sent those letters to Plaintiffs, even if Shapiro only had attorney employees. Consequently, there is a genuine dispute of material fact whether Shapiro is a third-party debt collector" for purposes of the TDCPA's bond requirement.

Shapiro also argues that even if it is a "third-party debt collector," it still is not subject to the TDCPA's bond requirement because it merely assisted SPS with a foreclosure, and "foreclosure, absent an attempt to collect a deficiency judgment, is not a 'debt collection' under Texas law."[17] The Texas Supreme Court has yet to address whether foreclosure is "debt collection" under the TDCPA. However, courts throughout Texas applying Texas law consistently have considered foreclosure actions to constitute "debt collection" under the TDCPA and have permitted foreclosure-related claims thereunder.[18] Therefore, Shapiro is not

---

[17]    Shapiro Motion [Doc. # 22], ¶ 13.

[18]    *See, e.g., Franco v. U.S. Bank Nat. Ass'n*, 2014 WL 4441224, at *6 (W.D. Tex. Sept. 8, 2014) ("Foreclosure actions are covered by the [T]DC[P]A because they eventually involve a debt collection aspect."); *Bracken v. Wells Fargo Bank, N.A.*, 13 F. Supp. 3d 673, 683 (E.D. Tex. 2014), *aff'd*, 612 F. App'x 248 (5th Cir. 2015) ("The TDC[P]A applies to foreclosure actions because foreclosure actions inevitably involve a debt collection aspect."); *Auriti v. Wells Fargo Bank, N.A.*, 2013 WL 2417832, at *7 n.4 (S.D. Tex. June 3, 2013) ("The Court follows the well-reasoned *Biggers* opinion in assuming that foreclosure activity can constitute debt collection under the TDC[P]A."); *Crum v. WMC Mortg. Corp.*, 2012 WL 12884748, at *4 (N.D. Tex. May 4, 2012) ("Defendants also claim that . . . Crum cannot state a [T]DCPA claim because initiating foreclosure proceedings is not
(continued...)

entitled to a judgment as a matter of law that its participation in the attempted foreclosure on the Property did not constitute "debt collection" within the meaning of the TDCPA. There also is a genuine dispute of material fact whether Shapiro sent the January 2017 letters to Plaintiffs in its capacity as SPS's counsel or as its debt collector. The Shapiro Motion is **denied** on Count Two of the Second Amended Complaint.[19]

---

(continued…)
'debt collection.' Defendants are mistaken. Though the Texas Supreme Court has not addressed whether foreclosure is a 'debt collection' under [T]DCPA, Texas state courts and federal district courts in Texas have held that a defendant's foreclosure actions can violate [T]DCPA."); *Woods v. Bank of Am., N.A.*, 2012 WL 1344343, at *5 (N.D. Tex. Apr. 17, 2012) ("In *Biggers*, this Court made its best 'Erie guess,' and concluded that 'the TDCPA can apply to actions taken in foreclosing real property.' The Court agrees with the conclusion reached in *Biggers*.") (internal citations omitted); *Biggers v. BAC Home Loans Servicing, LP*, 767 F. Supp. 2d 725, 732 (N.D. Tex. 2011) ("Based on the statutory definitions and the status of Texas case law, the court makes an *Erie*-guess that the TDCPA can apply to actions taken in foreclosing on real property."); *Marquez v. Fed. Nat. Mortg. Ass'n*, 2011 WL 3714623, at *4 (N.D. Tex. Aug. 23, 2011) ("Based on the statutory framework and rendition and the status of Texas case law, the court agrees with the reasoning in *Biggers* that the TDCA can apply to acts of foreclosure on real property."); *Watson v. Citimortgage, Inc.*, 814 F.Supp.2d 726, 734–35 (E.D. Tex.2011) (holding that foreclosure is "debt collection" under the TDCA and allowing the plaintiffs' claim that the mortgagor's representations surrounding the foreclosure were fraudulent, deceptive, or misleading); *Akintunji v. Chase Home Fin., L.L.C.*, 2011 WL 2470709, at *3 (S.D. Tex. June 20, 2011) ("Unlike the FDCPA, the TDC[P]A encompasses foreclosure activities by mortgage holders.").

[19] Shapiro also is not entitled to judgment on the pleadings with respect to Count Two for the same reasons it is not entitled to summary judgment. Copies of the January 2017 letters containing the *Greco* disclaimer in issue were attached as exhibits to the Second Amended Complaint and, at a minimum, support a
(continued…)

## C. Texas Civil Practices & Remedies Code § 12.002

In Count Three of their Amended Complaint, Plaintiffs allege that Shapiro violated Section 12.002 of the Texas Civil Practice and Remedies Code in connection with their filing of the Application. A claim under Section 12.002(a) has three elements: the defendant (1) made, presented, or used a document with knowledge that it was a "fraudulent lien or claim against real or personal property or an interest in real or personal property," (2) intended that the document be given legal effect, and (3) intended to cause the plaintiff physical injury, financial injury, or mental anguish. *Golden v. Wells Fargo Bank*, N.A., 557 F. App'x 323, 326–27 (5th Cir. 2014) (citing *Henning v. OneWest Bank FSB*, 405 S.W.3d 950, 964 (Tex. App.—Dallas 2013, no pet.). Shapiro is entitled to summary judgment on this claim on two different grounds. First, Plaintiffs have produced no evidence that Shapiro had actual knowledge that any information in the Application was false or fraudulent. Indeed, Plaintiffs have not offered any evidence whatsoever on the issue of Shapiro's knowledge of, or efforts to investigate, Plaintiffs' debt in

---

(continued…)

plausible inference that Shapiro was not acting in its capacity as counsel for SPS when it sent those letters.

In addition, while Shapiro correctly argues that Plaintiffs have failed to produce any evidence of actual damages resulting from Shapiro's alleged violation of TDCPA § 392.101, such lack of evidence is not fatal to Plaintiffs' claim because Plaintiffs would be entitled to statutory damages of $100 should they prevail on this claim at trial. TEX. FIN. CODE § 392.403(e).

connection with the Application. Without such evidence, Plaintiffs cannot satisfy the first element of Count Three, and the Shapiro Motion is **granted** on that claim.

Summary judgment also is appropriate on this claim because Plaintiffs have failed to present any evidence that Shapiro intended to cause Plaintiffs harm or injury by filing the Application. There is no genuine dispute of material fact that, on the date of the Application, Plaintiffs were in default on their mortgage due to their failure to make any monthly payments since at least May 2016, and that SPS had the right to foreclose on the Property.[20] There also is no genuine dispute of material fact that SPS retained Shapiro as outside counsel/debt collector to facilitate SPS's exercise of its contractual right to foreclose on the Property. Plaintiffs cite no evidence that Shapiro's actions were inconsistent with, or otherwise outside the scope of, its straightforward commercial relationship with SPS. They also cite no evidence that Shapiro filed the Application for any purpose other than assisting its client to enforce its contractual rights under the Security Instrument. Plaintiffs' therefore have failed to carry their summary judgment

---

[20]     Assuming *arguendo* that SPS was required to apply the insurance proceeds to the balance of the Loan, Plaintiffs still would have been in default because the insurance proceeds were less than the total outstanding balance of the loan and the Security Instrument specifically states that application of the insurance proceeds to the balance of the Loan does not excuse Plaintiffs from continuing to make their required monthly payments.

burden regarding the third element of Count Three.[21]   Accordingly, and also for

this independent reason, the Shapiro Motion is **granted** on Count Three of the

Second Amended Complaint.

### D.   FDCPA § 1692e(2)(A)

In Counts Four, Six and Eight of their Amended Complaint, Plaintiffs assert

claims against SPS and Shapiro for violation of FDCPA § 1692e(2)(A).   These

claims are predicated on SPS's and Shapiro's alleged "misrepresentation [to

---

[21]   *See, e.g., Reece v. U.S. Bank Nat. Ass'n*, 762 F.3d 422, 424 (5th Cir. 2014) (citing
*Golden*, 557 F. App'x at 327)  ("We have previously addressed, in an unpublished
case, a fraudulent lien claim in the similar context of a home foreclosure.  Reece,
like the homeowner in *Golden*, failed to plead facts sufficient to meet an element
of a claim under § 12.002, namely that the defendant 'intended to cause the
plaintiff physical injury, financial injury, or mental anguish.' A bank's usage of an
assignment for business purposes 'hardly equates to an argument that [the bank]
intended to inflict financial injury or mental anguish.'  Additionally, Reece has
failed to allege facts to show that his property would not otherwise be subject to
foreclosure absent the assignment; thus, the district court did not err when it found
that Reece failed to state a claim under § 12.002 of the Texas Civil Practice &
Remedies Code.") (internal citations omitted); *Nguyen v. Fed. Nat. Mortg. Ass'n*,
958 F. Supp. 2d 781, 794 (S.D. Tex. 2013) (Rosenthal, J.) (granting summary
judgment in defendants favor on Section 12.002 claim where "[n]othing in the
record supports an inference that the defendants acted with intent to cause the
plaintiffs physical injury, financial injury, mental anguish, or emotional distress"
and "defendants were authorized to enforce the note in issue"); *Fulcrum
Enterprises, LLC v. Bank of Am., N.A.*, 2014 WL 1669098, at \*5 (S.D. Tex. Apr.
25, 2014) (Lake, J.) (granting summary judgment in defendants favor on Section
12.002 claim where the plaintiff "failed to present any evidence that the
[d]efendants intended to cause it any injury" and citing *Golden* for the proposition
that "[Plaintiffs] have not alleged any facts showing that their property would not
be subject to foreclosure, even absent the assignment. . . . Therefore, they have
failed to state a claim under Section 12.002.").

Plaintiffs] of the amount of the debt allegedly owed by Plaintiffs"[22] and reporting "an inflated balance to the various credit bureaus."[23]  This claim lacks merit.

Under FDCPA § 1692e, a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt," including making a false representation of "the character, amount, or legal status of any debt."  15 U.S.C § 1692e(2)(A). Plaintiffs contend that SPS's and Shapiro's communications to them and credit reporting agencies were false or misleading because they failed to mention or otherwise account for the fact that SPS was holding nearly $127,000 of insurance proceeds relating to the Property in escrow.[24]  Although Plaintiffs are correct that none of the letters sent to them either by Shapiro or SPS in any way account for the insurance proceeds in issue here, they have failed to raise a genuine dispute of material fact as to whether, under the circumstances of this case, it was legally necessary for any of those

---

[22]     Second Amended Complaint [Doc. # 12], ¶ 24.

[23]     *Id.*, ¶ 28.

[24]     Plaintiffs make no argument that they received any communication from SPS or Shapiro that mischaracterized the character or legal status of their debt.  Indeed, the summary judgment evidence demonstrates that SPS and Shapiro properly characterized Plaintiffs' debt as mortgage debt and that Plaintiffs were in fact in default under the Security Instrument when they received notices of default from SPS and Shapiro.  Other than the omission of the insurance proceeds, Plaintiffs also fail to articulate how any communications SPS or Shapiro sent to them or credit rating agencies were otherwise false or misleading, or cite any supporting evidence in support of such a claim.

communications to contain such information. The summary judgment record shows that as of at least July 27, 2016, Plaintiffs claimed to Trustee and SPS that Plaintiffs were entitled to receive personally the vast majority of the insurance proceeds, despite clear language in Section 5 of the Security Instrument to the contrary. There is no evidence that between July 27, 2016 and July 7, 2017, the date on which Plaintiffs initiated this lawsuit in Texas state court, that Plaintiffs ever withdrew their demand that SPS distribute the insurance proceeds directly to them. Nor is there evidence that Plaintiffs ever requested that SPS or Trustee release the insurance proceeds to fund repairs to the Property or apply the insurance proceeds to the outstanding balance of the Loan in accordance with the terms of the Security Instrument. Indeed, from July 2016 on, Plaintiffs' actions and state court petition consistently maintained Plaintiffs' position that they were entitled to personally receive those funds.[25] Plaintiffs cite no authority for the proposition, and it is illogical to conclude, that where borrowers repeatedly insist that insurance proceeds received for property damage be disbursed to them directly and *not* be used to repair the property or be applied to the loan balance in accordance with the governing security instrument, it is false or otherwise

---

[25] Plaintiffs' Original Petition [Doc. # 1-4], ¶ VI ("Plaintiffs ask the Court to declare them the rightful owners of the flood insurance funds currently in the hands of SPS or U.S. Bank National. Plaintiffs further ask this Court to order the appropriate Defendant to disgorge said funds to Plaintiffs.").

misleading for the lender or its agents to omit mention of such insurance proceeds in communications with Plaintiffs or credit rating agencies.

Furthermore, Plaintiffs' FDCPA claims that SPS and Shapiro's communications were false and misleading are contingent upon Plaintiffs' ability to enforce their right under the Security Instrument to have the insurance proceeds applied to their mortgage debt balance. There is no genuine dispute that before Plaintiffs' insurer issued the insurance proceeds in June 2016, Plaintiffs were in material breach of the Security Instrument by failing to make their monthly mortgage payments when due.[26] There also is no genuine dispute that, up through the filing of this lawsuit, Plaintiffs insisted that the insurance proceeds be disbursed to them directly, and not be used to reduce the balance of the Loan or repair the Property. Thus, Plaintiffs also materially breached the Security Instrument by refusing to comply with the plain requirements of Section 5 of that agreement. "It is a fundamental principle of contract law that when one party to a contract commits a material breach of that contract, the other party is discharged or excused

---

[26] The evidence of record shows that Plaintiffs' last mortgage payment was made in May 2016. Moreover, Plaintiffs themselves argue that they were in default on their mortgage as far as back as December 2013, when SPS began servicing their loan. There is no evidence that at any time between December 2013 and June 2016 Plaintiffs were in compliance with their payment obligations under the Security Instrument. *See* TransUnion Credit Report of Chellie Jack Carr [Doc. # 23-4], pp. 2-3 (showing Plaintiff was at least 30 days late on her mortgage payments at all times from and after March 2013).

from further performance." *Bartush-Schnitzius Foods Co. v. Cimco Refrigeration, Inc.*, 518 S.W.3d 432, 436 (Tex. 2017) (quoting *Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 196 (Tex. 2004)).   SPS accordingly was not obligated under the Security Instrument to apply the insurance proceeds to the balance of Plaintiffs' mortgage over their objections.[27]   Absent such an obligation, Plaintiffs cannot articulate any cognizable basis on which communications from SPS or Shapiro were false or misleading.   Indeed, if SPS or Trustee disbursed the insurance proceeds directly to Plaintiffs as they had requested, the insurance proceeds would have had no effect at all on their balance under the Loan at all.

---

[27]   *See also Payne v. Wells Fargo Bank Nat. Ass'n*, 637 F. App'x 833, 835–36 (5th Cir. 2016) ("Payne first asserts that Wells Fargo breached the terms of the deed of trust. This claim is predicated on Payne's contention that Wells Fargo misused the insurances proceeds by failing to apply the funds to the note thereby curing her default. . . . Payne defaulted in March 2008, and Wells Fargo received the insurance proceeds in May 2009. . . . Payne offers no evidence that she performed her obligations under the note before Wells Fargo received the insurance proceeds. Rather than contest her failure to perform, Payne maintains that credit from the insurance payment would have cured her default. The terms of the deed, however, do not mandate that Wells Fargo apply insurance funds against the debt, and Payne's prior default precludes her breach of contract claim."); *Golden*, 557 F. App'x at 327–28 ("Finally, the Goldens contend that Wells Fargo breached the terms of the note when it did not credit them for payments allegedly received from insurance and credit default swaps. In Texas, performance or tendered performance by the plaintiff is an essential element of a breach of contract claim. Moreover, a party to a contract who is himself in default cannot maintain a suit for its breach.  The Goldens' claim fails as a matter of law because they do not allege that they performed their obligations under the note, nor do they challenge the district court's statement that '[the Goldens] admit that they have failed to perform under the loan contract—they have defaulted on their mortgage payments.'") (internal citations and quotation marks omitted).

Accordingly, the Motions are **granted** on Counts Four, Six, and Eight of the Second Amended Complaint.

### E.    TDCPA § 392.304(a)(8)

Finally, in Counts Five and Seven of their Second Amended Complaint, Plaintiffs assert a claim against SPS and Shapiro for violation of TDCPA § 392.304(a)(8).  Under TDCPA § 392.304(a)(8), a debt collector, "in debt collection or obtaining information concerning a consumer," is prohibited from "misrepresenting the character, extent, or amount of a consumer debt, or misrepresenting the consumer debt's status in a judicial or governmental proceeding."  TEX. FIN. CODE § 392.304.  To state a claim under TDCPA § 392.304(a)(8), a plaintiff must plausibly allege a misrepresentation led him or her to be unaware (1) that he or she had a mortgage debt, (2) of the specific amount owed, or (3) that he or she had defaulted.  *See Rucker v. Bank of Am., N.A.*, 806 F.3d 828, 832 (5th Cir. 2015); *Miller v. BAC Home Loans Servicing, L.P.*, 726 F.3d 717, 723 (5th Cir. 2013); *see also Smither v. Ditech Fin., L.L.C.*, 681 F. App'x 347, 354–55 (5th Cir. 2017).

Counts Five and Seven, which are premised on SPS's and Shapiro's alleged failure to acknowledge or reflect the insurance proceeds in their communications with Plaintiffs, are substantively identical to Counts Four, Six, and Eight of the Second Amended Complaint.  For the reasons discussed in section III.D. *supra*,

Plaintiffs have failed to present any evidence creating a genuine dispute of material fact as to whether they received any communication from Shapiro or SPS that contained a false or misleading representation about the amount of Plaintiffs' mortgage debt or that incorrectly stated that Plaintiffs' had defaulted on their mortgage debt. Accordingly, the Motions are **granted** with respect to Counts Five and Seven of the Second Amended Complaint.

## IV.     CONCLUSION AND ORDER

For the foregoing reasons, it is hereby

**ORDERED** that Defendants U.S. Bank National Association, as Trustee, in trust on Behalf of J.P. Morgan Mortgage Acquisition Trust 2006-CW2 and Select Portfolio Servicing, Inc.'s Motion to Summary Judgment and Motion for Judgment on the Pleadings [Doc. # 21] is **GRANTED** in its entirety. All claims in this case against Defendants U.S. Bank National Association, as Trustee, in trust on Behalf of J.P. Morgan Mortgage Acquisition Trust 2006-CW2 and Select Portfolio Servicing, Inc. are **DISMISSED WITH PREJUDICE**. It is further

**ORDERED** that Defendant Shapiro Schwartz, LLP's Motion for Summary Judgment and Motion for Judgment on the Pleadings [Doc. # 22] is **GRANTED** on Counts Three, Four, and Five of Plaintiffs' Second Amended Complaint. All such claims against Defendant Shapiro Schwartz, LLP are **DISMISSED WITH PREJUDICE**. In all other respects, Defendant Shapiro Schwartz, LLP's Motion

31

for Summary Judgment and Motion for Judgment on the Pleadings [Doc. # 22] is

**DENIED**.

SIGNED at Houston, Texas, this <u>14</u><sup>th</sup> day of **August, 2018**.

NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE